IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SALVADOR GUTIERREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 2396 |
| | ) | |
| NORFOLK AND SOUTHERN | ) | |
| RAILWAY CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants Norfolk and Southern Railway Co.'s (NSRC) and H & M International Transportation, Inc.'s (H&M) motions for summary judgment. For the reasons stated below, NSRC's and H&M's motions for summary judgment are granted.

**BACKGROUND**

Plaintiff Salvador Gutierrez (Gutierrez) alleges that he was injured while working for H&M. H&M is allegedly a trucking company which provides terminal services to several railroad companies, including NSRC. H&M allegedly maintains

an office within the Landers Yard (Landers) facility, which is owned and operated by NSRC.  Gutierrez alleges that he was a driver/spotter for H&M assigned to Landers, and that his duties as a spotter included the removal and placement of containers on flatcars as ordered by NSRC.  Gutierrez alleges that on January 28, 2011, he was transporting a container moving south to north while crossing Landers track 18 (Track 18), when he was struck by a train owned an operated by NSRC and sustained injuries as a result of the collision.

Gutierrez alleges that, since having worked at Landers for the past seventeen years, it was the standard operating procedure that spotters/drivers would cross over other tracks to get to another track in order to cut the travel time.  Gutierrez alleges that NSRC safety and operating rules require that a "flag man" be assigned and equipped with flags, flares or other types of warning devices in order to give notice to spotters and other workers when a track is occupied by an active train or when a string of rail cars is being shoved by a locomotive engine into the yard on the track.  Gutierrez alleges that on January 28, 2011, NSRC workers conducted a shove movement onto Track 18, and that no notice or warning was given.  Gutierrez alleges that the shove movement caused the lead railcar to collide with Gutierrez's truck, and that he sustained injuries as a result.  Gutierrez alleges that NSRC was negligent in

failing to provide proper safeguards and supervision at Landers so as to prevent his injuries.

In addition, Gutierrez alleges that he was terminated by H&M in retaliation for notifying H&M of the accident and that H&M violated his rights under the Federal Railroad Safety Act (FRSA). Gutierrez alleges that on February 7, 2011, H&M Terminal Manager, James Hamilton (Hamilton), sent Gutierrez a letter terminating his employment. Gutierrez alleges that he filed a grievance through his union against H&M to appeal his termination. Gutierrez alleges that shortly thereafter, Hamilton told Gutierrez that if he resigned, Hamilton would not contest his application for unemployment and would give Gutierrez a favorable reference for future potential employers. Gutierrez also alleges that on February 16, 2011, Hamilton told Gutierrez that if he gave up his intermittent family medical leave and his workers' compensation claim against H&M, Gutierrez would be reinstated as an employee of H&M. Gutierrez further alleges that H&M delayed or precluded Gutierrez from receiving appropriate medical treatment for his injuries sustained in the accident.

Gutierrez brought the instant action and includes in its complaint a negligence claim brought against NSRC (Count I), and a claim alleging a violation of the FRSA, 49 U.S.C. §20109 *et seq.*, brought against H&M (Count II). Both NSRC and H&M now move for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Negligence Claim (Count I)

Gutierrez alleges in Count I that NSRC was negligent in failing to provide proper safeguards and supervision so as to prevent his injuries. Since this claim arises under diversity jurisdiction and Gutierrez's alleged injuries occurred in Illinois, Illinois substantive law governs. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)(holding that in federal courts state law is applicable in cases not arising under federal law). To state a prima facie claim of negligence under Illinois law, a plaintiff must establish that: (1) "the defendant owed a duty to the plaintiff," (2) "the defendant breached that duty," and (3) "the plaintiff incurred injuries proximately caused by that breach." *Chandler v. Illinois Cent. R. Co.*, 798 N.E.2d 724, 728 (Ill. 2003). The first element of whether a duty existed is a question of law for the court to decide. *Id.* (citing to *Thompson v. County of Cook*, 609 N.E.2d 290 (Ill. 1993)).

A. Duty of Care

NSRC argues that it is entitled to judgment as a matter of law on Gutierrez's negligence claim since NSRC did not owe Gutierrez a duty of care. (N SJ Mem. 3).

1. Independent Contractor

NSRC argues that it did not owe Gutierrez a duty of care because H&M was an independent contractor hired by NSRC and NSRC did not control the means and methods of H&M's work. (N SJ Mem. 5). In general, liability cannot be imposed on an employer for the acts or omissions of its independent contractor. *See Aguirre v. Turner Const. Co.*, 582 F.3d 808, 815 (7th Cir. 2009)(stating that "no liability will be imposed on the employer . . . unless the evidence shows the employer . . . retained control over the 'incidental aspects' of the independent contractor's work")(quoting *Rangel v. Brookhaven Constructors, Inc.*, 719 N.E.2d 174, 177-78 (Ill. App. Ct. 1999)). Under Illinois law, this rule applies "even where the employer . . . ensures that safety precautions are observed and the work is done in a safe manner." *Aguirre*, 582 F.3d at 815 (citing to *Rangel*, 719 N.E.2d at 178). The Seventh Circuit has stated that, in such cases, an employer is "not in a good position to prevent negligent performance" since it "does not supervise the details of the independent contractor's work." *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 938 (7th Cir. 1986); *see Rangel*, 719 N.E.2d at 177-78 (reasoning that "[the employer] controlled the ends," but "[the independent contractor] was responsible for the means by which those ends were achieved")(quoting *Fris v. Personal Products Co.*, 627 N.E.2d 1265 (Ill. App. 1994)).

It is undisputed that NSRC had previously contracted with H&M for various services and that at the time of the January 28, 2011 incident, H&M was designated as an independent contractor. (R NSF Par. 8); (N Ex. A); (N Ex. A-1). It is also

undisputed that pursuant to their contract, H&M was solely responsible for the employment and supervision of any employee it engaged to perform any of its contractual duties and obligations and that H&M was to provide all personnel, drivers, tractors, and equipment necessary to perform such tasks. (R NSF Par. 10); (N Ex. A-1, Par. 1.B, 1.D). It is undisputed that the agreement between NSRC and H&M was governed by the Operations Guidelines for Contractors (Guidelines). (R NSF Par. 9); (N Ex. A-2). It is further undisputed that pursuant to the Guidelines, the responsibility for safety could not be transferred, and that each contractor would be held accountable for its actions on the job. (R NSF Par. 11); (N Ex. A-2, p. iv). It is undisputed that H&M, as a contractor, had the sole responsibility of controlling the means and manner of the work done by its employees and for the safe performance of its employee's job duties. (R NSF Par. 12); (N Ex. A-2, p. 3, par. 1.1). Finally, it is undisputed that Gutierrez was an employee of H&M, was expected to follow H&M's own policies and procedures, was trained by H&M and not NSRC, and was provided the tools and truck he drove by H&M. (R NSF Par. 13-15).

In addition, it is undisputed that on January 28, 2011, H&M operated a "blue flag" system at Landers by raising blue flags to alert train personnel when workers were present on the track. (R NSF Par. 17); (N Ex. A, par. 11). It is undisputed that according to this system, if the blue flags were down, it indicated that H&M workers were not present on the track, and that the track could be "live," meaning a train could use the track. *Id.* It is also undisputed that H&M informed its employees as to blue flag status by radio, and that NSRC and H&M employed different radio

7

frequencies for their respective employees working at Landers. (R NSF Par. 20). Gutierrez admits that he did not hear that Track 18 was going live with a shove move because he was pulling pins on a container outside of his truck. (R NSF Par. 21). It is undisputed that prior to the accident, Guiterrez drove through a "cut through" which blocked his peripheral view of the general area, but as he exited and approached Track 18, he looked left and right and did not see a blue flag. (R NSF Par. 22, 24).

Pursuant to its contract, the regulating Guidelines, and general practice, H&M was solely responsible for the supervision of its employees, as well as the means and methods by which the employees performed their duties at Landers. Gutierrez has not pointed to sufficient evidence that NSRC exerted the requisite control over H&M's work. Thus, no reasonable trier of fact could conclude other than that H&M was an independent contractor of NSRC and that NSRC did not control H&M's work.

### 2. Open and Obvious Condition

NSRC also argues that it did not owe Gutierrez a duty of care because the presence of a train on the railroad tracks at the time of the accident constituted an open and obvious condition. (N SJ Mem. 9). The relevant factors to determine whether a duty existed are: (1) "the likelihood of injury," (2) "the reasonable foreseeability of such injury," (3) "the magnitude of the burden of guarding against

injury," and (4) "the consequences of placing that burden on the defendant." *Bucheleres v. Chicago Park Dist.*, 665 N.E.2d 826, 836 (Ill. 1996)(citing to *Ward v. K Mart Corp.*, 554 N.E.2d 223 (Ill. 1990)). With regard to the foreseeability factor, under Illinois law, landowners "are not required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Sandoval v. City of Chicago*, 830 N.E.2d 722, 727 (Ill. App. Ct. 2005)(including where "condition and risk are apparent to and would be recognized by a reasonable person exercising ordinary perception, intelligence and judgment in visiting an area"). Accordingly, "[Illinois] landowners owe no duty to protect people from open and obvious dangers." *Hoesly v. Chicago Cent. & Pac. R. Co.*, 153 F.3d 478, 481 (7th Cir. 1998)(citing to *Bucheleres*, 665 N.E.2d at 832)(stating that "[t]he open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight," as "people are expected to appreciate and avoid obvious risks")).

In this case, a train on railroad tracks is considered an open and obvious danger. *See Park v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 960 N.E.2d 764, 770-71 (Ill. App. Ct. 2011)(holding that a moving train is open and obvious where person who is aware of approaching train attempts to cross tracks). Gutierrez admits that when he exited the cut-through and looked to his right, he saw a train on Track 18. (R NSF Par. 25); (P Dep. 131). It is undisputed that when asked about the train's relative distance to him, Gutierrez stated: "I'm moving and I wasn't paying attention to that because I'm trying to get my job done." (R NSF Par. 25); (P Dep. 132).

9

Gutierrez was aware of the train on Track 18 when crossing the same tracks and has not pointed to sufficient evidence that would preclude the open and obvious exception. Thus, no reasonable trier of fact could conclude other than that the moving train posed an open and obvious danger to Gutierrez. Therefore, NSRC owed no duty to Gutierrez and NSRC cannot be liable for Gutierrez's injuries. *See Hoesly v. Chicago Cent. & Pac. R. Co.*, 153 F.3d 478, 481 (7th Cir. 1998)(recognizing "where there is no duty there is no liability")(quoting *Bucheleres*, 665 N.E.2d at 832).

NSRC has pointed to sufficient evidence to support its motion for summary judgment on Count I. Therefore, NSRC's motion for summary judgment on Count I is granted.

II. FRSA Claim (Count II)

Gutierrez alleges in Count II that H&M violated his rights under the FRSA. H&M argues that it is entitled to judgment as a matter of law on Gutierrez's FRSA claim since Gutierrez's claim is meritless. (H SJ Mem. 8). The FRSA is governed under the rules and procedures promulgated in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (Whistleblower Act), 49 U.S.C. § 42121, including the burdens of proof. *See* 49 U.S.C. § 20109(d)(2)(A). Thus, in order to establish a FRSA claim, an employee must prove by a preponderance of the evidence that: (1) "[]he engaged in protected activity," (2) "the employer knew that

[]he engaged in the protected activity," (3) "[]he suffered an unfavorable personnel action," and (4) "the protected activity was a contributing factor in the unfavorable action." *Harp v. Charter Communications, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009). However, even if the employee is able to establish these four elements, the employer may still avoid liability "if it can prove 'by clear and convincing evidence' that it 'would have taken the same unfavorable personnel action in the absence of that [protected] behavior.'" *Id.*

A. Protected Activity

Gutierrez alleges that he engaged in a protected activity when he spoke with Hamilton on the phone while at the hospital on January 28, 2011. Under the FRSA, the employee must "reasonably" believe in the unlawfulness of the employer's actions which he is reporting. *Id.* In addition, the "reasonableness must be scrutinized under both a subjective and objective standard." *Id.* It is undisputed that Gutierrez told Hamilton during their phone conversation that he believed a "car man" should have been following the train into the yard. (R HSF Par. 31). However, Gutierrez admits that he was not certain what car men actually do, (R HSF Par. 31), and whether their duties were imposed by federal law. (P Dep. 2, p. 133). Gutierrez also admits that he was "not sure of" whether H&M violated a federal regulation, (P Dep. 2, p. 127), or even whether it violated one of its own safety rules or procedures. (P Dep. 2, p. 133-34). Therefore, under both an objective and subjective standard,

11

Gutierrez has failed to point to sufficient evidence that he engaged in a protected activity.

### B. Employer Knowledge

Gutierrez alleges that he was retaliated against after his "whistleblowing" conversation with Hamilton. However, an employer cannot retaliate if it does not know of the complaint. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000)(holder that an employer cannot retaliate in violation of Title VII when it is unaware of any complaints). It is undisputed that H&M utilizes the third-party administrator EGIS to administer workers' compensation leaves of absence pursued by Landers employees. (R DSF Par. 39). It is also undisputed that Hamilton had not communicated with the EGIS Senior Claim Representative who had placed Gutierrez on workers' compensation leave, Jaycee Stump (Stump). *Id.* Gutierrez has not pointed to sufficient evidence that Stump or Hamilton would otherwise have knowledge of Gutierrez's alleged protected activity. Therefore, Gutierrez cannot establish the requisite knowledge to pursue his claim.

### C. Causal Connection

Gutierrez alleges that he was terminated as a result of his complaint to Hamilton. However, it is undisputed that H&M and Gutierrez settled his grievance by agreement. (R DSF Par. 37). It is also undisputed that H&M agreed to reduce

Gutierrez's termination to a final warning and Gutierrez had agreed to work when he was released to do so by his physician. *Id.* It is further undisputed that Hamilton told Gutierrez to get whatever medical treatment he needed in order to return to work at H&M. *Id.* It is undisputed that Gutierrez had no personal knowledge of whether H&M employees played a role in any of the decisions made by EGIS. (R DSF Par. 61). Therefore, Gutierrez has not pointed to sufficient evidence that a causal connection existed or that his own performance was not a contributing factor in his termination.

### D. Termination

H&M argues that it would have terminated Gutierrez regardless of his alleged protected activity. The Seventh Circuit has held that if an employer can "articulate[] a reason for discharging the plaintiff not forbidden by law," then it is not the court's duty "to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997). It is undisputed that Gutierrez knew it was his duty to perform his duties in a reasonably safe manner. (R DSF Par. 5). It is also undisputed that Gutierrez had a limited range of vision when approaching Track 18. (R DSF Par. 33). Gutierrez himself admits that he saw a train on Track 18, (P Dep. 131), but did not know how far it was because "[he was]

13

moving and [he] wasn't paying attention to that because [he was] trying to get [his] job done." (P Dep. 132). Gutierrez was aware of the train on Track 18 when crossing the same tracks. Gutierrez has not pointed to sufficient evidence that he took reasonable measures to avoid the accident. Thus, no reasonable trier of fact could conclude other than that H&M had other reasons for his termination.

H&M has pointed to sufficient evidence to support its motion for summary judgment on Count II. Therefore, H&M's motion for summary judgment on Count II is granted.

III. Motions to Bar

The court also notes that NSRC and H&M both move to bar Gutierrez's expert Hank Best (Best) from offering expert testimony and from submitting his report into evidence, reasoning that the testimony and report contain speculative and unsubstantiated factual assertions. (N Excl. Mem. 1); (H Excl. Mem. 5). It is undisputed that Best did not speak with Gutierrez or any other individuals that were present at Landers on January 28, 2011, nor did Best visit the scene of the accident. (B Dep. 47-48). It is also undisputed that his proposed qualification is his former employment in the railroad industry, although Best has no experience working for H&M or NSRC. (B Dep. 38). It is further undisputed that Best had no familiarity

with H&M's or NSRC's policies and procedures, nor did Best have any specific knowledge of the train that struck Gutierrez. (B Dep. 59-60, 72-80).

Therefore, Best's expert testimony will not be considered since it would not "assist the trier of fact to understand or determine" the issues underlying Gutierrez's claims. *See Buckler v. Sam's Club, Inc.*, 75 F.3d 290, 293-94 (7th Cir. 1996)(applying *Daubert* standard for expert evidence and holding that exclusion is proper where the "conclusion [of an expert affidavit] is only conjecture and is wholly without evidentiary support")(citing to *Dauber v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993)); *see also* Fed.R.Evid. 702 (qualifying an expert's testimony if "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue"). Therefore, the motions to bar are granted.

## CONCLUSION

Based on the foregoing analysis, NSRC's and H&M's motions to bar and motions for summary judgment are granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 12, 2014

15